# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

—————————————————————— :
UNITED STATES OF AMERICA         :
                                 :         Hon. Michael E. Farbiarz
        v.                       :
                                 :         Crim. No. 25-339
ROUZBEH "ROSS" HAGHIGHAT,         :
BEHROUZ "BRUCE" HAGHIGHAT,        :
KIRSTYN M. PEARL,                 :
SEYEDFARBOD "FABIO" SABZEVARI,    :
JAMES D. ROBERGE                  :
—————————————————————— :

**United States' Response in Opposition to Defendant Kirstyn M. Pearl's Motion to Dismiss and for a Bill of Particulars (ECF No. 80)**

LORINDA I. LARYEA
Acting Chief
Fraud Section, Criminal Division
U.S. Department of Justice

JOHN J. LIOLOS
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
John.Liolos@usdoj.gov
(202) 768-2246

**Table of Contents**

The Indictment's Allegations as to Defendant Pearl ..........................................................................1

Legal Standards ...................................................................................................................................4

    I.    Standard of Review .............................................................................................................4

    II.   Charges and Elements .........................................................................................................5

Argument .............................................................................................................................................7

    I.    The Indictment adequately pleads the charged offenses. ..............................................7

        A.   The Indictment alleges the Defendant traded on the basis of MNPI. ..............7

        B.   The Indictment adequately alleges Pearl's culpable mental state. ..................10

    II.   The detailed Indictment and discovery render a bill of particulars improper. .........12

Conclusion ........................................................................................................................................14

# Table of Authorities

*Blaszczak v. United States,*
  141 S. Ct. 1040 (Jan. 11, 2021) ............................................................................5

*Costello v. United States,*
  350 U.S. 359 (1956) .............................................................................................4

*Dirks v. SEC,*
  463 U.S. 646 (1983) .............................................................................................5

*Apple Comput. Secs. Litig.,*
  886 F.2d 1109 (9th Cir. 1989) ......................................................................10–11

*Jackson v. Virginia,*
  443 U.S 307 (1979) ..............................................................................................8

*Lukon v. Pa. R.R. Co.,*
  131 F.2d 327 (3d Cir. 1942) .................................................................................8

*Matrixx Initiatives, Inc. v. Siracusano,*
  563 U.S. 27 (2011)..............................................................................................10

*McLean v. Alexander,*
  599 F.2d 1190 (3d Cir. 1979) ............................................................................10

*Salman v. United States,*
  580 U.S. 39 (2016) ...............................................................................................5

*Scott v. United States,*
  231 F. Supp. 360 (D.N.J. June 15, 1964) ............................................................4

*Sileo v. Superintendent Somerset SCI,*
  702 F. App'x 95 (3d Cir. 2017) ............................................................................8

*SEC v. Chappell,*
  107 F.4th 114 (3d Cir. 2024) .............................................................................10

*SEC v. Clark,*
  60 F.4th 807 (4th Cir. 2023) ................................................................................9

*SEC v. Clay Cap. Mgmt., LLC,*
  No. 2:11-cv-05020, 2013 WL 5946989 (D.N.J. Nov. 6, 2013) ...........................5

*SEC v. Ginsburg,*
  362 F.3d 1292 (11th Cir. 2004) ........................................................................8–9

*SEC v. Lum's, Inc.,*
  365 F. Supp. 1046 (S.D.N.Y. 1973) .....................................................................9

*SEC v. McGee,*
  895 F. Supp. 2d 669 (E.D. Pa. 2012) ...............................................................6–7

*SEC v. Panuwat*,
    702 F. Supp. 3d 883 (N.D. Cal. 2023) ........................................................... 10

*SEC v. Sargent*,
    229 F.3d 68 (1st Cir. 2000) ........................................................................ 9

*United States v. Advantage Med. Transp., Inc.*,
    751 F. App'x 258 (3d Cir. 2018) ........................................................... 4, 11

*United States v. Bergrin*,
    650 F.3d 257 (3d Cir. 2011) ................................................................... 4, 11

*United States v. Bhagat*,
    436 F.3d 1140 (9th Cir. 2006) ................................................................... 9

*United States v. Blakstad*,
    No. 19-cr-486, 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) ........................... 12

*United States v. Blaszczak*,
    56 F.4th 230–47 (2d Cir. 2022) ................................................................. 5

*United States v. Blaszczak*,
    947 F.3d 19 (2d Cir. 2019) ....................................................................... 5

*United States v. Bray*,
    853 F.3d 18 (1st Cir. 2017) ....................................................................... 9

*United States v. Buyer*,
    No. 22-cr-397, 2023 WL 1381970 (S.D.N.Y. Jan 31, 2023) ........................... 12

*United States v. Chow*,
    993 F.3d 125 (2d Cir. 2021) .................................................................. 5–6

*United States v. Coscia*,
    866 F.3d 782 (7th Cir. 2017) ................................................................... 5

*United States v. DeLaurentis*,
    230 F.3d 659 (3d Cir. 2000) ................................................................. 4, 11

*United States v. Griffith*,
    No. 20-cr-15, 2020 WL 4369650 (S.D.N.Y. July 29, 2020) ........................... 12

*United States v. Henke*,
    222 F.3d 633 (9th Cir. 2000) ................................................................... 8

*United States v. Heron*,
    323 F. App'x 150 (3d Cir. 2009) ............................................................ 8–9

*United States v. Kemp*,
    500 F.3d 257 (3d Cir. 2007) ................................................................. 4, 7

*United States v. Larrabee,*
    240 F.3d 18 (1st Cir. 2001) ................................................................................. 9

*United States v. Levoff,*
    No. 19-cr-780, 2020 WL 4670913 (D.N.J. Aug. 12, 2020) .................................7

*United States v. Mahaffy,*
    693 F.3d 113 (2d Cir. 2012) ...............................................................................5

*United States v. Martoma,*
    No. 12-cr-973, 2013 WL 2435082 (S.D.N.Y. June 5, 2013) ...........................13

*United States v. Moss,*
    No. 19-cr-701, 2021 WL 1196451 (D.N.J. Mar. 30, 2021) ............................ 12

*United States v. Nacchio,*
    No. 05-cr-00545, 2006 WL 2475282 (D. Colo. Aug. 25, 2006) ..................... 13

*United States v. Obaygbona,*
    556 F. App'x 161 (3d Cir. 2014) ........................................................................ 6

*United States v. Pinto-Thomaz,*
    352 F. Supp. 3d 287 (S.D.N.Y. 2018) .........................................................12–14

*United States v. Rajaratnam,*
    No. 09-cr-1184, 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ....................... 14

*United States v. Ramsey,*
    565 F. Supp. 3d 641 (E.D. Pa. 2021) ................................................................. 5

*United States v. Shvartsman,*
    722 F. Supp. 3d 276 (S.D.N.Y. 2024) ............................................................. 12

*United States v. Slawson,*
    No. 1:14-cr-00186, 2014 WL 5804191 (N.D. Ga. Nov. 7, 2014) ............. 13–14

*United States v. Stewart,*
    No. 15-cr-0287, 2016 U.S. Dist. LEXIS 202576 (S.D.N.Y. Jan. 19, 2016) ..................................... 13

*United States v. Urban,*
    404 F.3d 754 (3d Cir. 2005)...............................................................................14

*United States v. Willis,*
    844 F.3d 155 (3d Cir. 2016)................................................................................. 4

*United States v. Zaklama,*
    No. 23-cr-527, 2024 WL 4755378 (D.N.J. Nov. 12, 2024) ........................... 12

## Rules and Statues

15 U.S.C. § 78j ...................................................................................................... 5–6

18 U.S.C. § 2 .......................................................................................................... 5–6

18 U.S.C. § 1348 ...................................................................................................... 5

18 U.S.C. § 1349 ...................................................................................................... 6

Federal Rule of Criminal Procedure 7 ................................................................. 4

17 C.F.R. § 240.10b-5 ............................................................................................. 6

## Other Authorities

Eleventh Cir. Pattern J. Instrs. (Apr. 2024) ........................................................ 6

Third Cir. Model Crim. J. Instrs., "Direct and Circumstantial Evidence," § 3.03, Cmt. (Jan. 2018)..... 6

Pattern Jury Instructions Fed. Crim. Cases, D. South Carolina, (2024 ed) ............................................ 5

The United States, through undersigned counsel, respectfully responds to Defendant Kirstyn M. Pearl's Motion to Dismiss and for a Bill of Particulars (ECF No. 80 ("Mot.")), both of which the Court should deny. The Indictment adequately alleges the Defendant engaged in an insider trading scheme resulting in the securities fraud and conspiracy charges at issue. The Indictment's allegations, in addition to discovery, adequately apprise the Defendant of the charges and allow her to plead double jeopardy. Accordingly, a bill of particulars is unwarranted and the case should proceed to trial.

### The Indictment's Allegations as to Defendant Pearl

In this case, the detailed 35-page Indictment alleges an insider trading scheme in which Kirstyn M. Pearl, Rouzbeh "Ross" Haghighat, and three other co-Defendants "made illegal profits by trading in Company-1 securities based on material nonpublic information ('MNPI') regarding Company-2's acquisition of Company-1 (the 'Acquisition')." (Indict. para. 1. (ECF No. 10).)  The Defendants allegedly did so by "exploit[ing] MNPI they possessed in violation of duties owed in order to execute profitable and timely trades in Company-1 securities." (*Id.*)

The Indictment alleges relevant information about the Defendants, such as the fact that Ross Haghighat "was a Director on the Board of Directors of Company-1" and that "[i]n his position as a Director, Ross Haghighat obtained MNPI about Company-1's merger with Company-2." (*Id.* para. 2(a).) The Indictment explains that Pearl is Ross Haghighat's step-daughter. (*Id.* para. 2(c).)

The Indictment includes a detailed "Acquisition Timeline," setting forth facts alleging significant MNPI Ross Haghighat possessed and the dates on which he learned the MNPI as a Director on the Board. (*See* Indict. paras. 3–13.)[1] For example, the Indictment alleges that Ross Haghighat learned as of at least May 5 or 6, 2023, that on or about May 4, 2023, Company-2 made an offer to purchase Company-1 for $32 per share in cash, an approximately 67% premium to Company-

---

[1] The United States incorporates, rather than fully rehashing and repeating, the Indictment's allegations and factual recitation provided in the United States' other papers responding to the Defendants' pretrial motions. (*See* ECF Nos. 85, 86.)

1's stock's closing price the prior day of $19.13 per share. (*See id.* paras. 3–4.) Similarly, the Indictment alleges that, on or about May 22, 2023, Company-2 indicated it would increase its proposed all-cash purchase price to $36.00 per share and that Ross Haghighat and the Company-1 Board and senior management discussed that proposal. (*Id.* para. 8.)

The Indictment also alleges that, on or about that same day, May 22, 2023, Ross Haghighat sent Pearl a text message stating: "I just finished Board call," and "Looking forward to our drive back on Wednesday[.]" (*Id.* para. 34.) On or about Wednesday, May 24, 2023, Ross Haghighat allegedly picked up Pearl from in or around Brooklyn, New York, and they drove back to Ross Haghighat's home in or around West Newbury, Massachusetts. (*Id.* para. 35.)

The very next day, on or about May 25, 2023, Pearl allegedly visited a webpage displaying Company-1 options prices. (*Id.* para. 36.) The following day, Pearl allegedly visited a website with an "Options Profit Calculator." (*Id.*) On or about that same day, May 26, 2023, Pearl allegedly attempted to buy Company-1 call options, but the orders were rejected for insufficient funds. (*Id.* para. 37.) That same day, Pearl allegedly deposited into her bank account approximately $5,000 (which she later transferred to her brokerage) via an ATM in or around Newburyport, Massachusetts, near Ross Haghighat's home. (*Id.* paras. 35, 37.)

On or about June 5, 2023, Pearl allegedly purchased Company-1 call options expiring on or about June 16, 2023, for approximately $5,505. (*Id.* para. 38.) The Indictment explains that "[t]he purchase of a call option was considered a 'bullish' trade because the purchaser stands to benefit from an increase in the price of the underlying security." (*Id.* para. 2(j).) The Indictment also alleged that, on or about May 26, 2023, the Company-1 Board, including Ross Haghighat, had determined that Company-1 would be willing to proceed on an exclusive negotiating basis with Company-2 until on or about June 12, 2023, prior to the expiry of Pearl's options. (*See id.* paras. 9, 38.)

On or about June 12, 2023, at approximately 1:00 a.m. ET, the Acquisition Announcement occurred. (*Id.* paras. 13, 39.) Later that day, Ross Haghighat allegedly texted Pearl, "Did you get it done?," to which Pearl allegedly responded, "Chunks/game plan finalized – excited to show you when you get home[.]" (*Id.* para 40.) Starting on or about that day through on or about June 14, 2023, Pearl allegedly sold her Company-1 call options in "chunks" for an approximate profit of $114,081. (*See id.* para. 41.)

Pearl and Haghighat then allegedly discussed splitting the proceeds of Pearl's illicit profits in great detail over the ensuing months. (*See id.* paras. 42–51.) For example, on or about August 2, 2023, Ross Haghighat allegedly asked Pearl to "close the loop on fund transfer" by either writing him a check or transferring him money, and Pearl agreed to "get a cashiers check over to you when ready[.]" (*Id.* para. 43.) Pearl and Ross Haghighat allegedly discussed the check further and, on or about August 7, 2023, Pearl allegedly drew a cashier's check of approximately $55,015 for the benefit of Ross Haghighat. (*Id.* paras. 44–46.) The Indictment alleges Ross Haghighat "later claimed in messages to Pearl that he lost" the check and shows how, from approximately August 2023 to October 2023, Pearl and Ross Haghighat discussed the lost check and how to replace it. (*Id.* paras. 46–49.) Ultimately, on or about November 13, 2023, Ross Haghighat allegedly deposited a $55,000 cashier's check purchased by Pearl. (*Id.* para. 50.)

On or about April 24, 2024, Pearl allegedly messaged a family member about the missing check, stating, "I just totally had a brain popping realization – you know how SOMEHOW a $60k check went missing . . . it was intentional – since **it was an illegal insider trading move** . . . ." (*Id.* para. 51 (emphasis added).) Pearl then allegedly instructed the family member to "Delete these lol[.]" (*Id.*)

## Legal Standards

### I.    Standard of Review[2]

"An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "In determining the sufficiency of an indictment, practical rather than technical considerations are observed by the Court . . . ." *Scott v. United States*, 231 F. Sipp. 360, 363 (D.N.J. June 15, 1964). "[A]n indictment should be upheld 'unless it is so defective that it does not, by any reasonable construction, charge an offense.'" *United States v. Advantage Med. Transp., Inc.*, 751 F. App'x 258, 262 (3d Cir. 2018) (quoting *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016)).

An indictment is sufficient if it: "(i) contains the elements of the offense intended to be charged; (ii) sufficiently apprises the defendant of what [s]he must be prepared to meet; and (iii) allows the defendant to show with accuracy to what extent [s]he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quotations and citation omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare [her] defense and to invoke double jeopardy in the event of a subsequent prosecution." *Id.* (quotations and citations omitted). The court must accept all factual allegations in the indictment as true. *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011). A motion to dismiss is "not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

---

[2] For economy, where issues of law or fact repeat across the Defendants' various pretrial motions, the United States incorporates its related briefing in response to the other Defendants, rather than rehashing each issue in full detail each time, as it does here, with specific reference to the Response to Bruce Haghighat's Motion to Dismiss (ECF No. 85).

## II.    Charges and Elements

The Indictment's allegations against Pearl charge an insider trading scheme and conspiracy under a tipper-tippee theory of liability.[3] *E.g.*, *Salman v. United States*, 580 U.S. 39, 48–49 (2016); *Dirks v. SEC*, 463 U.S. 646, 662–63 (1983); *SEC v. Clay Cap. Mgmt., LLC*, No. 2:11-cv-05020, 2013 WL 5946989, at *3 (D.N.J. Nov. 6, 2013).

Count 1 charges Pearl and her co-Defendants with violating 18 U.S.C. §§ 1348 & 2.[4] The elements of Section 1348 are:

1. The Defendant(s) executed or attempted to execute a scheme to defraud (Section 1348(1)), or to obtain any money or property by means of material false or fraudulent pretenses, representations, or promises (Section 1348(2));

2. The Defendant(s) did so knowingly and with the intent to defraud; and

3. The scheme was in connection with a security.

*See, e.g.*, 18 U.S.C. § 1348; *United States v. Coscia*, 866 F.3d 782, 797 (7th Cir. 2017); *United States v. Mahaffy*, 693 F.3d 113, 125 (2d Cir. 2012); *United States v. Ramsey*, 565 F. Supp. 3d 641, 643 (E.D. Pa. 2021); *see also* Pattern J. Instrs. for Fed. Crim. Cases, D. South Carolina, p. 276 (2024 ed.). Tipper–tippee insider trading cases charged under Section 1348 generally follow the same principles as those under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)).[5] *See, e.g.*, *United States*

---

[3] Similarly, given that several of the Defendants in this matter make the same or similar arguments, the United States incorporates its other responsive papers, rather than fully restating the applicable law on such points.

[4] Both Counts 1 and 4 include liability under 18 U.S.C. § 2, which imposes liability on (a) "[w]hoever . . . aid, abets, counsels, commands, induces or procures" the commission of a substantive federal crime and (b) "[w]however willfully causes an act to be done which if directly performed by him or another would be" a federal crime.

[5] At least one court has found, however, that Section 1348 does not require a personal benefit to the tipper as required under Section 10(b). *See United States v. Blaszczak*, 947 F.3d 19, 45 (2d Cir. 2019) (ruling the personal benefit test does not apply to Section 1348 insider trading charges) ("*Blaszczak I*"), *vacated on other grounds by Blaszczak v. United States*, 141 S. Ct. 1040 (Jan. 11, 2021); *but see United States v. Blaszczak*, 56 F.4th 230, 246–47 (2d Cir. 2022) (Walker, J., concurring) (disagreeing with "personal benefit" holding of *Blaszczak I*).

5

*v. Chow*, 993 F.3d 125, 136–43 (2d Cir. 2021) (affirming insider trading convictions under both statutes).

Count 4 charges Pearl and Ross Haghighat with an execution of that insider trading scheme under 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2. As a district court in this circuit explained:

> To state a claim for tippee liability under § 10(b) and Rule 10b-5, the complaint must allege sufficient facts that, if proven, would establish that: (1) [tipper] misappropriated material, nonpublic information; (2) he breached [a] duty of trust or confidence; (3) [tipper] shared the information with [tippee]; . . . [(4) tippee] traded on the information; and ([5]) [tippee] knew or should have known that the information had been misappropriated from an insider.

*SEC v. McGee*, 895 F. Supp. 2d 669, 682 (E.D. Pa. 2012).

Whether the tippee knew of the tipper's breach of duty is often established circumstantially. As the *McGee* court explained, "[i]n the insider trading context, scienter may be inferred from circumstantial evidence because the specific facts are peculiarly within the knowledge of the defendants. Circumstantial evidence probative of scienter includes the sophistication of the tippee, the temporal proximity of communications between the tippee and the insider or alleged misappropriator and the tippee's trades, and trades atypical to the tippees investment patters." *McGee*, 895 F. Supp. 2d at 683–84 (internal quotations and citations omitted).

Finally, Count 19 charges Pearl and Ross Haghighat with a conspiracy to commit securities fraud in violation of 18 U.S.C. § 1349. As alleged here, the statute requires that (1) two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit securities fraud, as charged in the indictment; and (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it. *See, e.g.*, *United States v. Obaygbona*, 556 F. App'x 161, 163–64 (3d Cir. 2014); Eleventh Cir. Pattern J. Instrs., O54 (Apr. 2024).

**Argument**

**I.        The Indictment adequately pleads the charged offenses.**

Based on the Indictment's allegations, "a jury could find that the defendant committed the offense[s] for which [s]he was charged." *United States v. Levoff*, No. 19-cr-780, 2020 WL 4670913, at *1 (D.N.J. Aug. 12, 2020). Accordingly, the Court should deny the Motion.

The Defendant makes two principal arguments attempting to dismiss the Indictment, arguing the Indictment does not sufficiently allege: (A) that the Defendant received MNPI; and (B) the Defendant was in knowing possession of that MNPI. The Defendant is wrong. The Indictment contains substantial direct and circumstantial allegations that more than adequately plead both challenged points.

**A.  The Indictment alleges the Defendant traded on the basis of MNPI.**

The Defendant is correct that the Indictment does not allege with specificity the exact details of the particular MNPI Ross Haghighat provided to Pearl in their private conversations, on the basis of which she later traded. Nor does the Indictment have to—the elements are properly alleged along with sufficient facts for the Defendant to prepare her defense. *See Kemp*, 500 F.3d at 280. The Indictment contains copious allegations that compel the inference Ross Haghighat conveyed Pearl MNPI about the Acquisition, which she relied on in turning about $5,505 into over $114,000 in approximately one week with impeccably timed Company-1 call options. (*See* Indict. paras. 38, 41.) The Indictment also alleges she called that "an illegal insider trading move . . . ." (*See* Indict. para. 51.) The Indictment's allegations are sufficient.

In insider trading cases, elements of the offense, including the tip, are often established circumstantially. *See, e.g.*, *McGee*, 895 F. Supp. 2d at 683–84.[6] "The fact that evidence is circumstantial

---

[6] The United States' brief in response (ECF No. 85) to Defendant Bruce Haghighat's motion to dismiss contains many legal citations on these points that the United States incorporates here and, thus, omits.

7

does not mean that it has less probative value than direct evidence." Third Cir. Model Crim. J. Instrs., "Direct and Circumstantial Evidence," § 3.03, Cmt. (Jan. 2018)  (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Sileo v. Superintendent Somerset SCI*, 720 F. App'x 95 (3d Cir. 2017) (non-precedential); *Lukon v. Pa. R.R. Co.*, 131 F.2d 327 (3d Cir. 1942)).

Such circumstantial evidence of trading on the basis of MNPI in insider trading cases includes trading at suspicious times, in close proximity to communications with the insider, or in suspicious ways, like options trading. *See, e.g.*, *SEC v. Ginsburg*, 362 F.3d 1292, 1297–01 (11th Cir. 2004) (". . . [T]he closer in time the trader's exposure to the insider, the stronger the inference that the trader was acting on the basis of inside information."); *United States v. Henke*, 222 F.3d 633, 639 (9th Cir. 2000) (affirming insider trading conviction based on "overall pattern of trading").

For example, in *United States v. Heron* the Third Circuit reversed a district court's ruling that the jury could not have found the defendant traded on the basis of MNPI where the government introduced only circumstantial evidence the defendant knew the MNPI (upcoming financial results of the defendant's company). 323 F. App'x 150, 156 (2009). The Third Circuit found "a reasonable jury could have found that [the defendant] possessed such information," where among other things (1) the defendant bought stock two weeks before the disclosure on the day the company finalized its quarterly numbers, (2) there was testimony the defendant would have been aware of those numbers, and (3) the defendant promptly sold the shares for an $11,000 profit after the earnings release. *See id.* The Third Circuit explained:

> The jury is entitled to draw reasonable inferences from the evidence, and we find that a jury could reasonably have concluded that [the defendant] possessed the Q3 financial information when he traded. [The defendant's] trading pattern . . . combined with his position in the company, as well as the evidence establishing the existence of the finalized financial results permit such an inference. Although the District Court was correct in stating that there was "no direct evidence that [the defendant]" possessed the material, non-public information at issue . . . such direct evidence is not required.

*Id.* (internal citations omitted).

Here, as in *Heron*, the Indictment alleges (1) Pearl bought *options* (less than) two weeks before the Acquisition Announcement, (2) Ross Haghighat was aware of the Acquisition and with Pearl, and (3) Pearl promptly sold the options for a large profit right after the Acquisition Announcement, which she discussed and proceeded to share the proceeds with Ross Haghighat. *See id.*; (Indict. paras. 33–51.)

Other courts find similarly. *See, e.g., United States v. Bray*, 853 F.3d 18, 22–23 (1st Cir. 2017); *see also SEC v. Lum's, Inc.*, 365 F. Supp. 1046, 1050 (S.D.N.Y. 1973) (finding sufficient to infer tip where tipper gave bare recommendation to buy stock but evidence established tipper's unique relationship to issuer and evidence of cover up). *See, e.g., SEC v. Ginsburg*, 362 F.3d 1292, 1297–301 (11th Cir. 2004) ("The larger and more profitable the trades, and the closer in time the trader's exposure to the insider, the stronger the inference that the trader was acting on the basis of inside information."); *United States v. Larrabee*, 240 F.3d 18, 21–22 (1st Cir. 2001) ("[O]pportunity in combination with circumstantial evidence of a well-timed and well-orchestrated sequence of events, culminating with successful stock trades, creates a compelling inference of possession by the tipper."); *see also SEC v. Clark*, 60 F.4th 807, 814–15 (4th Cir. 2023) (explaining that where there was "no direct evidence" that tipper told intermediate tippee about the merger but the evidence established intermediate tippee knew MNPI and communicated with secondary tippee, "a jury could have reasonably concluded that [intermediate tippee] had insider information about the merger before [defendant] began buying call options"); *United States v. Bhagat*, 436 F.3d 1140, 1149 (9th Cir. 2006); *SEC v. Sargent*, 229 F.3d 68, 75 (1st Cir. 2000) (finding jury could infer trading on the basis of MNPI from only circumstantial evidence).

Here, there are significant allegations of suspicious activity establishing circumstantial evidence supporting the permissible inferences that Ross Haghighat tipped Pearl MNPI about the Acquisition and that Pearl traded on the basis of that MNPI. Such allegations include:

- Pearl's awareness of Ross Haghighat's position on the Board (Indict. para. 34 ("I just finished Board call"));

- Pearl's searching of Company-1 options prices shortly after driving to Massachusetts with Ross Haghighat (*id.* paras. 35–37);

- Pearl's initial order for options being rejected for insufficient funds, followed by a deposit of $5,000 into an ATM in Massachusetts near Ross Haghighat's house (*id.* paras. 35, 37);

- The fact that Pearl's call options, a bullish trade, expired on June 16, 2023, shortly after the June 12, 2023, exclusive negotiating period Ross Haghighat knew about (*id.* paras. 2(j), 9, 38);

- Pearl's sale of her options after the Acquisition Announcement over several days—or in "chunks" as she had told Ross Haghighat she planned to do (*id.* paras. 40–41);[7]

- Pearl and Ross discussing sharing the proceeds of the trading and then proceeding to do so (*id.* paras. 40–50);

- Pearl admitting to lying about what the money was for (*id.* para. 47); and

- Pearl's admission of guilt ("illegal insider trading move") and evidence of consciousness of guilt ("Delete these") (*id.* para. 51).

Tellingly, the Defendant does not cite a single insider trading case in which an indictment with similar allegations was dismissed. This should not be the first.

### B. The Indictment adequately alleges Pearl's culpable mental state.

Similarly, the Indictment's allegations establish that Pearl acted with a culpable mental state, which is also routinely proven circumstantially. *See, e.g.*, *SEC v. Chappell*, 107 F.4th 114, 135 (3d Cir. 2024) ("Scienter is a 'mental state embracing intent to deceive, manipulate, or defraud.' It can be demonstrated by circumstantial evidence." (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011))); *McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir. 1979) ("Circumstantial evidence may often be the principal, if not the only, means of proving bad faith."); *see also In re Apple Comput. Secs.*

---

[7] *See SEC v. Panuwat*, 702 F. Supp. 3d 883, 901 (N.D. Cal. 2023) ("[T]he timing of the sales . . . sheds light on whether a defendant used MNPI.").

*Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) ("Insider trading in suspicious amounts or at suspicious times is probative of bad faith and scienter.").

Here, the Indictment relies not only on circumstantial evidence, but includes direct evidence of Pearl's culpable mental state: her own description of the scheme as "illegal insider trading." (*See* Indict. para. 51.) The Court should reject the Defendant's efforts to distance herself from that statement by attempting to challenge the truth and weight of the Indictment's allegations, which must be accepted here. *See, e.g., DeLaurentis*, 230 F.3d at 660. For example, the Defendant's argument that "the Indictment contains no factual connection between [the] text in April 2024 and the trades in May 2023"[8] does not survive a cursory review of the Indictment's allegations. (*See* Mot. at 4.) Rather, paragraphs 40 through 50 trace a detailed factual record of Ross Haghighat and Peal discussing splitting the proceeds, losing the check, and finally getting the money to Ross Haghighat (all of which must be accepted). (*See* Indict. paras. 40–50.) The Indictment also *specifically alleges* (which also must be accepted) that the message was "concerning the purportedly missing check[.]" (*Id* para. 51.) Counsel's efforts to contest the factual allegations and establish Pearl referred to a different lost "$60,000 check" that "was an illegal insider trading move" must wait for trial. (*Id.* para. 51.); *see also Bergrin*, 650 F.3d at 265.

In short, it cannot be said that this Indictment "does not, by any reasonable construction, charge an offense." *Advantage Med. Transp.*, 751 F. App'x at 262. The Indictment adequately and properly alleges that Ross Haghighat tipped MNPI regarding the Acquisition to Pearl, and that Pearl's knowingly traded Company-1 options on the basis of that MNPI. A jury should decide what is so.

---

[8] Pearl's trades executed on or about June 5, 2023. (*See Indict.* paras. 38, 83.)

## II.     The detailed Indictment and discovery render a bill of particulars improper.

The Court should deny the Defendant's request for a bill of particulars because the detailed Indictment, coupled with the United States' provision of significant, organized discovery (including the majority of it the day counsel appeared on the case),[9] render a bill of particulars unnecessary here.

"A bill of particulars is appropriate when there is a need, not where it is merely a useful means for a defendant to acquire more detailed pre-trial discovery." *United States v. Griffith*, No. 20-cr-15, 2020 WL 4369650, at *3 (S.D.N.Y. July 29, 2020) (cleaned up).[10] "As such, a court should not grant a motion for a bill of particulars if its only use is to secure evidence pretrial." *United States v. Zaklama*, No. 23-cr-527, 2024 WL 4755378, at *4 (D.N.J. Nov. 12, 2024). "[A]ccess to discovery weakens the case for a bill of particulars." *United States v. Moss*, No. 19-cr-701, 2021 WL 1196451, at *7 (D.N.J. Mar. 30, 2021).

Courts in insider trading cases routinely deny motions for bills of particulars seeking precisely the same information—the content of specific MNPI—which the Defendant seeks here. *See, e.g.*, *United States v. Shvartsman*, 722 F. Supp. 3d 276, 328 (S.D.N.Y. 2024) (rejecting, in insider trading case, defense motion for further particulars about "the material nonpublic information that the defendants are alleged to have shared or traded on"); *United States v. Buyer*, No. 22-cr-397, 2023 WL 1381970, at *3 (S.D.N.Y. Jan 31, 2023) (denying motion for bill of particulars "to particularize exactly what material nonpublic information was conveyed between defendants"); *United States v. Blakstad*, No. 19-cr-486, 2020 WL 5992347, at *10 (S.D.N.Y. Oct. 9, 2020) (denying motion for bill of particulars seeking details of MNPI in case with one tipster, one company, and four earnings releases spurring unlawful transactions); *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 302 (S.D.N.Y. 2018) (denying

---

[9] Pearl's counsel entered an appearance on June 16, 2025. (*See* ECF No. 50.) The United States produced the majority of discovery in the case to Pearl's counsel that same day.

[10] Here, too, the United States incorporates its fuller exposition of the applicable law, set forth in response to the same argument advanced by Defendant Ross Haghighat. (*See* ECF No. 86.)

motion "to particularize exactly what" MNPI the tipper defendant conveyed where "Indictment clearly describe[d] the overall nature of the information here in issue, at what time and in what capacity [tipper] acquired this information, [tipper's] subsequent contact with [tippee], and [tippee's] trades thereafter"); *United States v. Stewart*, No. 15-cr-0287, 2016 U.S. Dist. LEXIS 202576, at *25, 28–31 (S.D.N.Y. Jan. 19, 2016) (denying motion for bill of particulars where tipster charged with providing information in advance of five sets of transactions); *United States v. Slawson*, No. 1:14-cr-00186, 2014 WL 5804191, at *13 (N.D. Ga. Nov. 7, 2014) (rejecting request to particularize the precise MNPI provided, finding the requests sought "evidentiary detail . . . that is not appropriate in a bill of particulars"); *United States v. Martoma*, No. 12-cr-973, 2013 WL 2435082, at *3–6 (S.D.N.Y. June 5, 2013) (denying request to particularize "the specific information" defendant allegedly obtained and "the specific dates on which such information is alleged to have been shared").

The Defendant points principally to *United States v. Nacchio*, a very different case that was far more complex than this one. *See United States v. Nacchio*, No. 05-cr-00545, 2006 WL 2475282, at *1, 7–8 (D. Colo. Aug. 25, 2006). There, the court granted the defendant's motion for a bill of particulars when the 42-count indictment charged a securities fraud scheme spanning five-and-a-half years involving numerous different corporate events and financial information stated at a high level of generality. *See id.* Here, in contrast, the MNPI at issue deals with a single event (the Acquisition), and the 35-page Indictment sets forth a detailed timeline alleging specifically when Ross Haghighat became aware of specific MNPI concerning that Acquisition, which covered only an approximate 6-week period (May 4, 2023 through June 12, 2023) when the material information was non-public.

The Defendant's request is more akin to the demand Judge Rakoff rejected in *United States v. Pinto-Thomaz*, where that defendant argued the government should "disclose now whatever inferences it has drawn regarding what [MNPI] was allegedly conveyed." 352 F. Supp. 3d at 303. As Judge Rakoff explained, "[t]his is a demand for exactly what a bill of particulars is specifically barred from doing:

compelling the government to disclose the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charges, or a preview of the Government's evidence or legal theories." *Id.*

What particulars the United States has at present beyond the Indictment have been supplied to the Defendant in organized, electronically searchable discovery with a detailed index. *See, e.g.*, *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005). Furthermore, the United States "need not provide particulars where it has none." *United States v. Rajaratnam*, No. 09-cr-1184, 2010 WL 2788168, at *9 (S.D.N.Y. July 13, 2010). Furthermore, the particulars the Defendant seeks are within the Defendant's own ken, given that she was a participant to the private conversations with Ross Haghighat when the MNPI was allegedly conveyed. (*See* Indict. para. 24–25.); *see also Slawson*, 2014 WL 5804191, at *14 ("In a case where the evidence being sought by a bill of particulars consists of activities which a defendant participated or witnessed, the defendant could hardly have been surprised by the government's proof at trial." (collecting cases) (cleaned up)).

The Defendant has a detailed Indictment and significant, organized discovery. That is more than sufficient to prepare adequately for trial and obviates the need for any bill of particulars.

## Conclusion

The Court should deny the Defendant's Motions to Dismiss and for a Bill of Particulars because (1) the detailed Indictment adequately alleges the charged offenses and, (2) along with the significant discovery provided, allows the Defendant to adequately prepare for trial.

Dated: August 29, 2025                Respectfully submitted,

                                      LORINDA I. LARYEA
                                      Acting Chief
                                      Fraud Section, Criminal Division
                                      U.S. Department of Justice

                           By:        _/s/ John J. Liolos_____
                                      John J. Liolos, Trial Attorney
                                      Fraud Section, Criminal Division
                                      United States Department of Justice
                                      1400 New York Avenue, NW
                                      Washington, DC 20005
                                      John.Liolos@usdoj.gov
                                      (202) 768-2246

**<u>Certificate of Service</u>**

I hereby certify that, on August 29, 2025, a true and correct copy of the foregoing was served on all parties through the CM/ECF system.

By:     <u>/s/ John J. Liolos</u>

John J. Liolos, Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
John.Liolos@usdoj.gov
(202) 768-2246