**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No.: 25-cr-00339-MEF |
| | ) | |
| v. | ) | **Oral Argument Requested** |
| | ) | |
| KIRSTYN M. PEARL | ) | |
| | ) | |
| *Defendant* | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KIRSTYN M. PEARL'S**
**MOTION FOR A JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 AND**
**MOTION FOR A NEW TRIAL PURSUANT TO RULE 33**

Paul T. Weinstein
Eric Mullery
Emmet, Marvin & Martin, LLP
120 Broadway, 32nd Floor
New York, NY 10271
(212) 238-3090
pweinstein@emmetmarvin.com
*Attorneys for Kirstyn M. Pearl*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD – RULE 29 AND RULE 33 ................................................ 5

    A.    Rule 29 ................................................................................................ 5

    B.    Rule 33 ................................................................................................ 6

ARGUMENT ...................................................................................................... 7

    A.    A Judgment of Acquittal Should be Entered Because Insufficient Evidence to Prove Guilt was Admitted as to Ms. Pearl ........................................................ 7

    B.    The Denial of Ms. Pearl's Severance Motion Prevented Her from Receiving a Fair Trial and the Prejudice was not Cured by the Jury Instructions ...................................................................................... 11

        i.    The Government's Argument Negated the Limiting Instruction ................... 12

        ii.    The Structure of the Indictment made any Attempt at a Limiting Instruction Ineffective ................................................................ 15

    C.    The Government Improperly Shifted the Burden of Proof and Evidentiary Errors at Trial Require the Vacating of Ms. Pearl's Conviction ......................... 17

        i.    The Government Improperly Shifted the Burden of Proof to the Defense.........17

        ii.    Additional Evidentiary Errors Resulted in an Unfair Trial .............................. 17

CONCLUSION .................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Coleman v. Johnson*,
566 U.S. 650 (2012)...................................................................................................5

*Dirks v. S.E.C.*,
463 U.S. 646 (1983)...............................................................................................8, 15

*Gov't of Virgin Islands v. Felix*,
569 F.2d 1274 (3d Cir. 1978).................................................................................19

*Gov't of Virgin Islands v. Parrilla*,
7 F.3d 1097 (3d Cir. 1993).....................................................................................17

*Jackson v. Virginia*,
443 U.S. 307 (1979).................................................................................................5

*Kamienski v. Hendriks*,
332 F. App'x 740 (3d Cir. 2009) .............................................................................5

*Mutual Life Ins. Co. v. Hillmon*,
145 U.S. 285 (1892)...............................................................................................19

*S.E.C. v. Antar*,
15 F. Supp. 2d 477 (D.N.J. 1998) ...........................................................................7

*S.E.C. v. McGee*,
895 F.Supp.2d 669 (E.D. Pa. 2012) ........................................................................7

*S.E.C. v. Teo*,
No. 2:04-CV-01815, 2010 WL 3184349 (D.N.J. Aug. 10, 2010) ...........................8

*United States v. Atl. States Cast Iron Pipe Co.*,
No. CRIM. 03-852(MLC), 2007 WL 2282514 (D.N.J. Aug. 2, 2007)....................7

*United States v. Davis*,
183 F.3d 231 (3d Cir.) *amended*, 197 F.3d 662 (3d Cir. 1999) ...............................10

*United States v. Idowu*,
157 F.3d 265 (3rd Cir. 1998) .................................................................................17

*United States v. Johnson*,
302 F.3d 139 (3d Cir. 2002)....................................................................................6

*United States v. Jones*,
　393 F.3d 107 (2d Cir. 2004) ........................................................................5

*United States v. Levy*,
　694 F. Supp. 1136 (D.N.J. 1988) .............................................................10

*United States v. Maury*,
　695 F.3d 227 (3d Cir. 2012) ........................................................................7

*United States v. Pourhassan et al.*,
　No. CR PX 22-440, 2026 WL 123835 (D. Md. Jan. 16, 2026) ...............18

*United States v. Tarango*,
　396 F.3d 666 (5th Cir. 2005) ......................................................................6

*United States v. Thayer*,
　201 F.3d 214 (3d Cir.1999) .........................................................................5

*In re Winship*,
　397 U.S. 358 (1970) ...................................................................................17

**Statutes**

15 U.S.C. § 78j(b) ....................................................................................1, 4, 7, 15

18 U.S.C. § 1348 ...........................................................................................1,7

18 U.S.C. § 1349 .....................................................................................1, 4, 7,15

**Other Authorities**

Fifth Amendment of the United States Constitution ......................................5

Sixth Amendment of the United States Constitution .....................................5

Federal Rule of Criminal Procedure 29 ............................................... *passim*

Federal Rule of Criminal Procedure 33 ............................................... *passim*

## INTRODUCTION

This Memorandum of Law is respectfully submitted in support of the renewal of Defendant Kirstyn M. Pearl's motions for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, to vacate the judgment, and for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, in the interest of justice.

Ms. Pearl was charged in the indictment and tried together with codefendants Rouzbeh "Ross" Haghighat ("Ross"), Seyedfarbod "Fabio" Sabzevari ("Sabzevari"), and James D. Roberge ("Roberge"). Behrouz "Bruce" Haghighat ("Bruce," and, together with Ms. Pearl, Sabzevari and Roberge, the "Ross Codefendants") was also named a defendant in the indictment, but his case was severed before trial.

The charging instrument joined all defendants in Count One, alleging a scheme to commit securities fraud in violation of 18 U.S.C. § 1348 ("Section 1348"). Ms. Pearl was then charged solely with Ross Haghighat in Count Four, alleging securities fraud in violation of 15 U.S.C. § 78j(b) ("Section 78j(b)"), and in Count Nineteen, alleging a securities fraud in violation of 18 U.S.C. § 1349 ("Section 1349"), which was a conspiracy solely between Ms. Pearl and Ross Haghighat to commit the scheme to defraud alleged in Count One. Ross Haghighat was charged in all Counts in the indictment. Apart from the charge of a single scheme to defraud against all defendants in Count One, the other defendants, like Ms. Pearl, were charged in separate Counts together solely with Ross Haghighat, and were not jointly charged with any other defendant.

The government's theory at the trial was that Ross Haghighat, allegedly a Chinook corporate insider in possession of material non-public information ("MNPI"), as a tipper separately tipped the codefendants as tippees, who then traded in Chinook securities. The government offered no proof at trial that any alleged tippee had knowledge of or participated in any relevant

interactions between Ross Haghighat or any other tippee, or were aware of any relevant Chinook securities trading activity other than their own.

As set forth below, the evidence of Ms. Pearl's communications and actions offered by the government at trial was insufficient to prove Ms. Pearl's guilt beyond a reasonable doubt as to any Count against her. Thus, a judgment of acquittal under Rule 29 is appropriate or in the alternative a new trial should be granted pursuant to Rule 33. There was no direct proof of the transfer of MNPI by Ross Haghighat to Ms. Pearl. Nor was there any proof at all whether direct or circumstantial regarding the content of any communication concerning Chinook by Ross Haghighat to Ms. Pearl. Conversely, there was proof that public information in Ms. Pearl's possession supported her Chinook trading activity. Thus, on the trial evidence based solely on Ms. Pearl's own communications and actions, which was the only evidence properly admitted against her, there was insufficient evidence to convict.

To overcome the hurdle of having insufficient proof against Ms. Pearl, at trial the government improperly and repeatedly argued that Ms. Pearl's actions and interactions with Ross Haghighat were the same as the pattern of communications and trading of Sabzevari, Roberge, and Bruce Haghighat. The government repeatedly claimed to the jury that this could not be a "coincidence" but was substantial and dispositive proof of the defendants' guilt. Using evidence of Ross Haghighat's interactions and communications with other defendants inadmissible against Ms. Pearl, the government told the jury that Ms. Pearl's defense was just one of the group of false "stories" being told by each defense lawyer, because any claim that four separate purportedly identical courses of behavior by Ross Haghighat and purported tippees was a "coincidence" insulted the jury's "common sense." *See* Tr. 2382:6-10. Throughout this case, the government repeated to the jury that the similarity of the course of communications with Ross Haghighat and

2

Ms. Pearl, Sabzevari, Roberge and Bruce Haghighat and their subsequent trading was the core of the government's proof in this case, demanded that the jury join them in this conclusion, and emphasized that each set of interactions with a Ross Codefendant corroborated all the others, proving each defendants' guilt. *See, e.g.,* Tr. 27:4-5 ("One, two, three, four [referring to the communications and conduct of the Ross Codefendants], over and over again in each case"); Tr. 2378:8-13 ("The defense would have you believe that all of these things are wild coincidences, one after the other after the other. But that is nonsense. It is literal nonsense. Because timing is everything, and the timing and sequence of events here tells you what you need to know. Use your common sense"); Tr. 2382:6-10 ("They're stories, one after the other after the other, and they all can't be true. They require you to believe that absolutely unbelievable coincidences happened, not just one but one after the other after the other. It's incredible . . . ."); Tr. 2384:17-22 ("When you begin your deliberations . . . [l]ook at the patterns in the communications and the trading . . . [t]rust your judgment, trust your common sense, trust your ability to know illegal insider trading when you see it"); Tr. 2383:4-7 (". . . you know the defendants traded.  You can see that in the records, too.  And you can see when all of it happened.  You can line it all up.  And when you put them all together and you use your common sense, the truth is clear").

Furthermore, while this government conduct alone deprived Ms. Pearl of a fair trial and established the need for a new trial, prevention of the jury's use of improper evidence as against Ms. Pearl in fact was impossible after the denial of her severance motion, regardless of any effort to issue a limiting instruction. As discussed further below, Ms. Pearl was charged together with Ross Haghighat with securities fraud in Count Four, and securities fraud conspiracy in Count Nineteen, while Ross Haghighat was charged in all other Counts, which included Counts in which he was charged together with Sabzevari (Counts Five - Ten), Roberge (Counts Eleven - Seventeen)

3

and Bruce Haghighat (Count Three), and in which Ms. Pearl was not named. The result of this structure of the indictment was that the entirety of the proof as to the communications between Ross Haghighat and each Ross Codefendant, and the trading of each Ross Codefendant, was admissible as against Ross Haghighat on Counts in which he was charged jointly with Ms. Pearl, which are Counts Four and Nineteen of the indictment, as well as on Count One as to all defendants.

Consequently, the verdict against Ross Haghighat on Counts Four and Nineteen, as well as Count One, necessarily included jury consideration as against Ross Haghighat of proof of the communications and trading of all Ross Codefendants, even though the Counts were alleged solely against Ross Haghighat and Ms. Pearl. Critically, and as discussed further below, given the elements of securities fraud/tipper liability in violation of Section 78j(b) (Count Four) and securities fraud conspiracy in Section 1349 (Count Nineteen), to find Ross Haghighat guilty as a tipper, the jury necessarily, based on all evidence as to all Ross Codefendants, was required to consider and conclude that Ms. Pearl in fact was intentionally tipped by Ross, and that she knowingly received that tip, traded, and gave Ross money from the trade. Furthermore, as to the Count Nineteen conspiracy charge, assessing the Count as against Ross Haghighat, the jury was required to weigh all evidence concerning the Ross Codefendants to assess whether Ms. Pearl in fact intentionally joined the conspiracy.  The structure of the indictment, therefore, not only permitted but in fact required that the jury to consider proof of the entirety of the conduct concerning all Ross Codefendants in determining whether Ms. Pearl was guilty of Count Four as a tippee and was guilty as a coconspirator in Count Nineteen. No limiting instruction could prevent this. Therefore, the indictment itself and the fact of a joint trial with Ross Haghighat required that the jury disregard or nullify any limiting instruction aimed at segregating the proof as against Ms.

Pearl, or made its application fundamentally ambiguous and so confusing and inscrutable as to render it meaningless.

As a result, while the evidence properly admissible as to Ms. Pearl was insufficient to prove her guilt beyond a reasonable doubt, she was improperly convicted because the jury was required to assess her guilt by evidence relevant and admissible only as to Ross Haghighat and the other Ross Codefendants. Ms. Pearl's conviction, therefore, should be vacated pursuant to Rule 29, or a new trial ordered pursuant to Rule 33.

Finally, Ms. Pearl respectfully adopts the arguments made in the motions pursuant to Rules 29 and 33 by codefendants Ross Haghighat, Sabzevari and Roberge, to the extent applicable to Ms. Pearl and consistent with her present motion.[1]

## LEGAL STANDARD – RULE 29 AND RULE 33

A.    Rule 29

"The Fifth and Sixth Amendments require the government to prove each element of a criminal charge beyond a reasonable doubt whether or not the defendant presents evidence contesting the element." *United States v. Thayer,* 201 F.3d 214, 222 (3d Cir.1999). Rule 29 of the Federal Rules of Criminal Procedure provides that the Court, on the defendant's motion, must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(c); *Jackson v. Virginia*, 443 U.S. 307, 317 n.10 (1979). Therefore, if the Court, viewing the evidence in the light most favorable to the prosecution, finds that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, it must vacate the conviction. *Coleman v. Johnson,* 566 U.S. 650, 651 (2012). In making this determination the Court must ascertain whether the jury has drawn "specious inferences," such that insufficient

---

[1] This adoption includes but is not limited to the argument on behalf of Ross Haghighat that the Court's response to Jury Note 1 permitted a conviction without adequate proof of the communication of MNPI.

evidence of guilt was presented. *United States v. Jones,* 393 F.3d 107, 111 (2d Cir. 2004).  Thus, "[i]f the evidence tends to give equal or nearly equal circumstantial support to guilt and to innocence . . . reversal is required[.]" *Kamienski v. Hendriks*, 332 F. App'x 740, 750-51 (3d Cir. 2009) (citation omitted).

Here, using evidence inadmissible against Ms. Pearl but admissible only against codefendants, the Government both created specious inferences not properly drawn from the admissible evidence, and demanded that the jury reject properly drawing inferences from evidence offered by Ms. Pearl, showing that her trading was based on public information. This requires reversal of Ms. Pearl's conviction or a new trial.

B.    Rule 33

Under Federal Rule of Criminal Procedure 33(a), this Court may "[u]pon the defendant's motion--vacate any judgment and grant a new trial if the interest of justice so requires." In contrast to a motion under Rule 29, when evaluating a Rule 33 motion, the Court "does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). A court may set aside a verdict in the interests of justice even when the evidence at trial, while "tangentially support[ing] a guilty verdict," actually "preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." *United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005) (internal quotation marks and citation omitted).

Here, a miscarriage of justice occurred. The government, while offering insufficient evidence to convict as against Ms. Pearl, obtained a conviction against her using three other similar narratives that, while inadmissible against Ms. Pearl, were offered against Ross Haghighat on Counts Four and Nineteen, which required for Ross Haghighat's conviction that Ms. Pearl also be guilty of knowingly receiving MNPI and giving a benefit to Ross Haghighat, and intentionally

entering into a conspiracy to do this. Therefore, the jury's finding of guilt as against Ross Haghighat on Counts Four and Nineteen, using all evidence concerning Ross Codefendants, required the jury's assessment of Ms. Pearl conduct based on the same evidence, inadmissible against her. No limiting instruction did or could adequately prevent this. Ms. Pearl's conviction, as a result, was fundamentally unfair such that a miscarriage of justice has occurred, requiring a new trial pursuant to Rule 33(a).

## ARGUMENT

A. <u>A Judgment of Acquittal Should be Entered Because Insufficient Evidence to Prove Guilt was Admitted as to Ms. Pearl</u>

The evidence presented at trial as against Ms. Pearl was insufficient to establish the elements of Securities Fraud in violation of Section 1348 or Section 78j(b), or Securities Fraud Conspiracy in violation of Section 1349. Each of Sections 1348 and 78j(b) required that the government prove beyond a reasonable doubt that: 1) MNPI was transferred, intentionally, to Ms. Pearl, 2) Ms. Pearl knew that she had received MNPI; and 3) she intentionally traded securities based on the MNPI. *See S.E.C. v. McGee*, 895 F.Supp.2d 669, 675 (E.D. Pa. 2012)(citing *Dirks v. S.E.C.*, 463 U.S. 646, 655 n. 14 (1983)); *S.E.C. v. Antar*, 15 F. Supp. 2d 477 (D.N.J. 1998). Section 1349 required proof beyond a reasonable doubt that Ms. Pearl knowingly entered a conspiracy with Ross Haghighat in which each agreed that Ms. Pearl would receive MNPI from Ross Haghighat, and trade upon it. If these elements were not established at trial, a judgment of acquittal by the court is required. *See United States v. Atl. States Cast Iron Pipe Co*., No. CRIM. 03-852(MLC), 2007 WL 2282514 at 71, n. 71, 135 (D.N.J. Aug. 2, 2007)(The court "considered whether all essential elements of each charged offense were established by sufficient evidence" and granted acquittal on those charges where the elements were not established) aff'd sub nom. *United States v. Maury*, 695 F.3d 227 (3d Cir. 2012).

The proof at trial admissible as against Ms. Pearl did not establish these elements. Viewed in its best light in favor of the government, the government's proof against Ms. Pearl was composed of the following:

1. Ross Haghighat possessed MNPI.

2. Ms. Pearl rode in the car with Ross Haghighat on May 24, 2023.

3. Ms. Pearl explored the mechanics of options trading and attempted to trade Chinook options on May 25, 2023, and successfully did so on June 5, 2023. Ms. Pearl spent $5,000 on options expiring on June 16, 2023.

4. Ross Haghighat knew of Ms. Pearl's trading shortly after the June 12, 2023 announcement of the Chinook/Novartis transaction and did not react negatively.

5. Ms. Pearl sold the options prior to June 16, 2023, and later transferred a portion of the proceeds of the Chinook trades to Ross Haghighat.

This is a summary of the universe of facts as against Ms. Pearl. It is insufficient to prove beyond a reasonable doubt that Ross Haghighat transferred MNPI or any information regarding Chinook to Ms. Pearl, that he did so intentionally knowingly and intending that she would trade, that Ms. Pearl received MNPI, that she did so knowingly, that she intentionally traded in Chinook securities based on MNPI, and that she knowingly entered into a conspiracy with Ross Haghighat to do any of this. Therefore, except possibly that Ross Haghighat was in possession of MNPI on May 24, 2023, no element of any of the charges against Ms. Pearl were proved beyond a reasonable doubt, requiring her acquittal. *See Dirks*, 463 U.S. at 646; *S.E.C. v. Teo*, No. 2:04-CV-01815, 2010 WL 3184349, at 11 (D.N.J. Aug. 10, 2010).

The above was evidence offered by the government at trial. Ms. Pearl and Ross Haghighat offered evidence as well, unchallenged by the government, that:

1.  Ms. Pearl followed Chinook securities prior to her trades, and before the commencement of Chinook/Novartis negotiations. KP DX-3; DX 326; DX 327.

2.  Ms. Pearl, at the time she purchased Chinook options on June 5, 2023, was following a website with analysts' reports for Chinook, and contemporaneously with her trading, preserved on her telephone KP DX-3, notice of the analyst report dated May 16, 2023, of Cantor Fitzgerald analyst, Dr. Duncan, DX 28. DX 28 in its title predicted an imminent acquisition of Chinook. This provided a substantial inference that Ms. Pearl's trading was based on public information. KP DX-3; DX 28

3.  Ms. Pearl followed both positive and negative public information concerning Chinook following her trading, additionally indicating that the trading was not based on MNPI. GX 446-448, 451-452, 455.

4.  Ms. Pearl was a highly experienced speculative securities trader. GX 1458, 1468.

The complete absence of a proven MNPI transmission was made clear in the Government's closing. The Government invoked a car ride between father and daughter and regular interactions amongst family friends. Tr. 2383:1-3. None of these interactions were proven to be MNPI transmissions. In fact, the most crucial piece of MNPI - the purchase price of Chinook in the upcoming acquisition - was shown to not be in Ms. Pearl's possession. Each screenshot or options price calculations introduced by the Government showed purchase prices that were *not* the ultimate price of $40 per share. Instead, Ms. Pearl's calculations and options were based on estimated share prices at contract expiration of $35, $38, $39. *See* GX 444, 450, 454, all of which were consistent with public analyst reports. *See* GX 88, p. 155. The strike prices Ms. Pearl used in her calculations included $22.50, $25, and $30. *See* GX 437, 458, 454. Not a single trial exhibit supported an inference that Ms. Pearl was in possession of information that the Novartis acquisition price was $40.

9

The Government never once admitted direct or indirect evidence of Ms. Pearl's specific intent to commit a scheme to defraud in Count One, commit securities fraud as alleged in Count Four, or enter into a conspiracy to commit securities fraud alleged in Count Nineteen with Ross Haghighat. Instead, the government simply offered proof of trading activity, called on the jury to speculate, and, as set out below, used inadmissible proof relevant only to other defendants to create a substantial improper inference of wrongdoing by Ms. Pearl. In fact, the only purported evidence as to Ms. Pearl's state of mind was a text between Ms. Pearl and her mother in April 2024, long after the June 2023 trading, which was exculpatory:

> I just totally had a brain popping realization - you know how SOMEHOW a $60k check went missing on Ross's desk - it was intentional - since it was an illegal insider trading move by him, if he had a random big deposit immediately after the sale of the company/the stock going up, it'd be suspicious if he was ever looked into - so he made us all think we were crazy searching around the house for that shit when he prob ripped it up[.]

GX 432.

The Government held this text message out as critical evidence in their opening, closing, and at multiple points during the Government case. *See* Tr. 34:11-25; Tr. 1241-1245; Tr. 2362:4-19. However, Ms. Pearl's  lack of guilty knowledge is established in the first sentence of the text. One cannot have a "brain popping realization" that they have been in a criminal conspiracy nearly a year after the criminal act. This realization demonstrates that Ms. Pearl never had the intent to enter into a securities fraud conspiracy. A conspiracy cannot exist where an alleged participant lacked knowledge of the conspiracy. *United States v. Davis*, 183 F.3d 231, 244 (3d Cir.) *amended*, 197 F.3d 662 (3d Cir. 1999) ("a person cannot conspire with himself"). Where prosecution evidence does not establish a defendant's knowledge of the purpose of conspiracy, and there is no evidence that proves a defendant's intent to participate in conspiracy, a judgment of acquittal is required. *United States v. Levy*, 694 F. Supp. 1136 (D.N.J. 1988).

B.    <u>The Denial of Ms. Pearl's Severance Motion Prevented Ms. Pearl from Receiving a Fair Trial and the Prejudice was not Cured by the Jury Instructions</u>

Prior to trial in this case, Ms. Pearl, along with codefendants moved for a severance of her trial because of the impossibility of the jury separately considering the properly admitted evidence as to each Ross Codefendant. Sept. 26, 2025 Tr., 106:5-25; 107:1-19. The Court determined, however, that the risk of spillover prejudice among defendants was insufficient to provide defendants with separate trials, and that a limiting instruction would prevent prejudice. *Id.*

In its jury instructions, the Court first instructed the jury to "decide the facts from all the evidence that you've heard and seen in the courtroom. That job is yours. It is yours alone." Tr. 2276:24-25; 2277:1. The instructions further included the following regarding separate consideration as to each defendant and a limiting instruction concerning the use of certain evidence:

> The Government has charged two or more Defendants are charged in Count 1, Counts 4 Through 17, and Count 19 of the Indictment. In our system of justice, however, guilt or innocence is personal and individual. You must separately consider the evidence against each Defendant, and you must return a separate verdict for each Defendant. For each Defendant, you must decide whether the Government has proved that particular Defendant guilty beyond a reasonable doubt. Your decision on one Defendant, whether guilty or not guilty, should not influence your decision on any of the other Defendants. Each Defendant should be considered individually.

ECF No. 303-1, Final Instruction No. 10, p. 16.

> You have heard certain evidence in this case that only concerned a particular Defendant.   In fact, the Government's presentation proceeded largely on a Defendant-by-Defendant basis. You heard recordings  of interviews of certain Defendants by law enforcement.  You can consider this specific recorded evidence only in the case against the particular Defendant involved in the recording at issue.  You must not consider the evidence in the case against the other Defendants. The evidence as to the timing and substance of Fabio Sabzevari's trades cannot be considered against Kirstyn Pearl or James Roberge.  The evidence as to the timing and substance of Kirstyn Pearl's trades cannot be considered against Fabio Sabzevari

11

or James Roberge.  The evidence as to the timing and substance of James Roberge's trades cannot be considered against Kirstyn Pearl or Fabio Sabzevari.

Again, each defendant is entitled to have his or her case decided just on the evidence which applies to him or her.  For each defendant and each offense you must decide whether the Government has proved beyond a reasonable doubt that the particular defendant at issue is guilty of a particular offense. Evidence that only applies to a single defendant, as set out above, should not influence your decision on any of the other defendants. Each defendant and each offense must be considered separately.  As I told you earlier, each and every defendant is entitled to the individual consideration of the case against him or her.  That is part of the law, which I am providing to you, and which you must follow.

ECF No. 303, Final Instruction No. 28, p. 39.

1.   <u>The Government's Jury Addresses Negated any Limiting Instruction and the Structure of the Indictment Prevented a Fair Trial</u>

i.   <u>The Government's Arguments Negated the Limiting Instruction</u>

The jury instructions in this case were insufficient to cure the prejudicial spillover that occurred for two reasons. First, the government's arguments demanded that the jury consider all evidence regarding the actions of Ross Haghighat and all Ross Codefendants together, negating any limiting instruction. Below are examples of the negation of any limiting instruction by the government:

1.   The Government's Opening Statement

Each of these defendants has their own story, and you should consider them independently.  But with each defendant, you will see that the scheme operated in four steps. Step One: Ross Haghighat got that secret information. Step Two: Ross Haghighat found ways to tip his co-defendants to buy Chinook stock or options. Step Three: Each of the co-defendants acted on the tip and bought Chinook stock or options. And, Step Four: They sat back and waited for the profit to roll in.  This would happen when the Novartis deal was announced and the value of their stock or options skyrocketed. One, two, three, four, over and over again in each case.

Tr. 26:16-25; 27:1-5.

[J]ust two days after the car ride with Ross Haghighat, she rushed to a bank 15 with thousands of dollars in cash. Ladies and gentlemen, you will see a video of Kirstyn Pearl stuffing that cash into an ATM so that she could buy those Chinook options as soon as possible.

Tr. 33:13-18.

[You] will see phone records showing Mr. Sabzevari talking to Ross Haghighat on a particular day in late May 2023. And then you'll hear recorded calls with brokers shortly afterwards. And in those calls you will hear how Mr. Sabzevari describes how, *like Kirstyn Pearl*, he wondered how much cash he could shove into an ATM to be able to buy options as quickly as possible.

Tr. 36:25; 37:1-7 (emphasis added).

2.   Government Summation and Rebuttal Summation

The defense would have you believe that all of these things are wild coincidences, one after the other after the other. But that is nonsense. It is literal nonsense. Because timing is everything, and the timing and sequence of events here tells you what you need to know. Use your common sense.

Tr. 2378:8-13.

They're stories, one after the other after the other, and *they all can't be true*. They require you to believe that absolutely unbelievable coincidences happened, not just one but one after the other after the other. It's incredible, and it makes no sense. You can see the truth in black and white.

Tr. 2382:6-10 (emphasis added).

Folks, this case is one soaking wet umbrella, absolutely drenched, after the other after the other after the other. The floor is soaking wet. You can be sure it's coming down out there. Go back to the three sources of evidence. First, Defendant Haghighat's access to MNPI. He knew all about the deal early and often, no question about it. Second, his communications. They're in black and white in the records. He was talking to all the defendants in all of this pivotal period. You can see it in black and white. And you know they met in person, too. Car ride to Boston, beer and dip. He worked with Defendant Sabzevari at the time. Third, you know the defendants traded. You can see that in the records, too. And you can see when all of it happened. You can line it all up. And when you put them all together and you use your common sense, the truth it [sic] clear.

Tr. 2382:17-25; 2383:1-11.

> When you begin your deliberations, believe what you can see, believe what you can hear, believe what you can read. Look at the patterns in the communications and the trading. Read and listen to the defendants' own words. Trust your judgment, trust your common sense, trust your ability to know illegal insider trading when you see it. On behalf of the United States, we ask you to return the only verdict consistent with the law, the facts, justice, and your common sense . . .

Tr. 2384:17-25; 2385:1.

There is no question that the government told the jury to not only use the evidence relevant to all Ross Codefendants against each other, but to further conclude that the different explanations offered for the Ross Codefendants' conduct showed that all of their explanations were false. The government, therefore, negated separate consideration of the conduct of each Ross Codefendant by comparing it to the other Ross Codefendants, and then ridiculed the different explanations as a group, which together told a story of purported "wild coincidences, one after the other after the other" that were "nonsense. It is literal nonsense." Tr. 2378:8-13. In its entirety this excerpt and all excerpts from the government's arguments above were a demand that the jury both use all evidence of all Ross Codefendants against the others, and to compare the defenses of each Ross Codefendant to the others and use the defense against the others, including Ms. Pearl. For both, the demand to the jury from the government was to line up all the proof as to each Ross Codefendant in the jury room (Tr. 2383:1-11), and to use all the proof against all of them.

Because there was insufficient evidence as against Ms. Pearl to prove her guilt beyond a reasonable doubt, a judgment of acquittal should issue pursuant to Rule 29, or a new trial granted pursuant to Rule 33. Furthermore, because the government improperly negated the limiting instruction and rendered it ineffective, Ms. Pearl's conviction should be reversed pursuant to Rule

14

29 for the lack of evidence, or in the alternative, a new trial should be granted pursuant to Rule 33 in the interest of justice.

ii.    <u>The Structure of the Indictment made any Attempt at a Limiting Instruction Ineffective</u>

Furthermore, in a joint trial with Ross Haghighat and the Ross Codefendants it was impossible to prevent overwhelming prejudicial spillover evidence from depriving Ms. Pearl of a fair trial even with a limiting instruction, because of the structure of the indictment. Putting Count One aside for the moment, Ms. Pearl was charged together with Ross Haghighat in Count Four, alleging substantive securities fraud in violation of Section 78j(b) and securities fraud conspiracy in violation of Section 1349. To find Ross Haghighat culpable under these statutes, the jury was required to find that he "breached his fiduciary duty to the shareholders by disclosing the information to the tippee [Kirstyn Pearl] and the tippee [Kirstyn Pearl] [knew] or should know that there has been a breach." *Dirks*, 463 U.S. at 660. Accordingly, under the Court's jury instructions, for Ross Haghighat to be found guilty of Count Four, the jury was required to find that he intentionally disclosed MNPI to Ms. Pearl with the expectation that she would trade, and that he would receive a "personal benefit" from her. ECF No. 303, Final Instruction No. 14, p. 23-24. For Kirstyn Pearl to be found guilty of the same Count, the same core elements needed to be proved. ECF No. 303, Final Instruction No. 14, p. 24-25.

The result of this is that under Count Four, the jury was required to consider evidence relevant to all Ross Codefendants to assess whether Kirstyn Pearl was intentionally tipped by Ross Haghighat with the expectation that she would trade and that he would receive a personal benefit. To find Ross Haghighat guilty on Count Four, using evidence as to all Ross Codefendants, the jury was required to find Ms. Pearl guilty of the core elements of the same offense using the same evidence, even though the vast majority of evidence was inadmissible as against her. The limiting

15

instruction, therefore, was not, and no limiting instruction could be effective in this circumstance to preclude the jury's consideration of inadmissible evidence against Ms. Pearl to determine her guilt. A vacating of the conviction, therefore, is required under Rule 33, in the interest of justice.

Count Nineteen is the same. For the jury to convict Ross Haghighat, it was required to find that "two or more persons" agreed to commit securities fraud, and that the "Defendant and at least one other alleged conspirator shared a unity of purpose and intent to achieve a common goal or objective to commit the offense." ECF No. 303, Final Instruction No. 23, p. 34. As to Ross Haghighat, the jury was instructed to use all evidence concerning all Ross Codefendants to make this determination as to him. But Count Nineteen was a two-person conspiracy with Ms. Pearl, so the jury was required to use all Ross Codefendant evidence to determine whether Ms. Pearl intentionally joined the conspiracy with "a unity of purpose and intent" to commit the crime, which is a finding of guilt as to Ms. Pearl on Count Nineteen using a huge proportion of evidence inadmissible as to her. No limiting instruction could prevent this given the structure of the indictment. A new trial, therefore, is necessary in the interest of justice pursuant to Rule 33, or a judgment of acquittal is appropriate if the Court finds as it should that based on the admissible evidence against her acquittal of Ms. Pearl is required.

Finally, while all defendants were named in Count One of the indictment, the extreme prejudice from the government's statements to the jury demanding their use of inadmissible evidence against Ms. Pearl and the structure of the indictment which required the jury to do the same, a new trial is necessary in the interest of justice pursuant to Rule 33 or a judgment of acquittal again is appropriate if the Court finds that insufficient evidence admitted regarding Ms. Pearl was offered at trial.

C.    The Government Improperly Shifted the Burden of Proof and Evidentiary Errors at Trial Require the Vacating of Ms. Pearl's Conviction

        i.    The Government Improperly Shifted the Burden of Proof to the Defense

In its rebuttal summation, the government stated:

> You are the sole judges of what the evidence proves. And so when you're thinking about the claims that you've heard today, you've heard from all of the defense counsel and from the United States, you should ask yourself whether there is actual evidence that supports those claims or whether that was a lawyer's argument.
> Tr. 2537:5-10.

The defense objection to this statement, done in rebuttal so that there could be no defense response, was overruled by the Court. The Third Circuit has explicitly stated that "shifting of the burden of proof to the defendant would be constitutionally impermissible under the Due Process Clause." *Gov't of Virgin Islands v. Parrilla*, 7 F.3d 1097 (3d Cir. 1993). "Due process commands that no man shall lose his liberty unless *the Government* has borne the burden of convincing the factfinder of his guilt." *In re Winship*, 397 U.S. 358, 364 (1970)(quoting *Speiser v. Randall*, 357 U.S. 513, at 526) (emphasis added). This burden shifting by the Government in their rebuttal violated Ms. Pearl's due process rights, and the overruling of the defense team's objection to that line of argument was incorrect.

        ii.    Additional Evidentiary Errors Resulted in an Unfair Trial

In addition to the failure of the quantum of admissible evidence against Ms. Pearl establish guilt beyond a reasonable doubt, and that an enormous amount of inadmissible evidence was required to be used to assess Ms. Pearl's culpability, a reversal of the conviction also is appropriate based upon incorrect evidentiary rulings at trial. *See United States v. Sallins,* 993 F.2d 344 (3d Cir. 1993).

First, before the trial concluded, highly probative evidence of Ms. Pearl's innocence was excluded by the Court. The defense moved to admit KP DX 1, an Apple Note that Ms. Pearl drafted on her phone, as non-hearsay evidence pursuant to Rule 803 because it was offered for the writer's state of mind, not for the truth of the matter asserted. This note, created on June 11, 2023, and edited on June 12, was contemporaneous with the period of charged conduct and clearly indicated that Ms. Pearl intended to engage in legal trading and had a lack of guilty knowledge – making it also an exculpatory statement of future intention. Under the *Hillmon* doctrine, hearsay statements reflecting a declarant's intentions or future plans are admissible to show that the intended act was subsequently performed. *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285 (1892). The Court incorrectly rejected this evidence on the basis of a hearsay objection from the Government. Tr. 1550-1556. Had the jury seen this note, it very well could have acquitted Ms. Pearl.

Second, the admission of GX 456, a Tweet that stated, "someone knew the KDNY deal" was happening was not proven to be connected to any of the charged defendants and offered the unsupportable inference that the poster of the Tweet was referring to Ms. Pearl, or Ms. Pearl was admitting guilty intent by saving the screenshot. Tr. 1224-1225. The use of this irrelevant evidence to create a specious inference is the exact type of manifest injustice relevant pursuant to Rule 33.

Third, the admission of recordings proffered as admissions by Mr. Sabzevari created spillover prejudice against Ms. Pearl that the limiting instruction could not cure. *See* GX 685A – 685Z; Tr. 461 – 471. A court should consider, when confronted with the possibility of prejudice from the admission of evidence, the probable effectiveness or lack of effectiveness of a limiting instruction. *Gov't of Virgin Islands v. Felix*, 569 F.2d 1274 (3d Cir. 1978). Here, the Court attempted to cure the spillover prejudice of Mr. Sabzevari's various statements implicating the other defendants, including by the phrase "everyone knew."

> You can consider those recordings as evidence. They're in evidence. But, but, but, but, but, here is the instruction: You can consider them as evidence only against Mr. Sabzevari. You can't consider them as evidence in the case against anyone else. They're evidence against Mr. Sabzevari, but they're only evidence against Mr. Sabzevari. That's the rule of the road. That's our law. Part of why it's there is that each defendant is entitled to have the case decided just based on the evidence that applies against and as to that defendant. And Mr. Sabzevari's statement only applies against him.

Tr. 524:6-16.

Despite the Court's instruction, Sabzevari's statements were of the volume and type that no curative instruction could render sufficiently nonprejudicial. The statements appeared to paint "everyone," i.e., the defendants, with the same brush. Where evidence is offered against other codefendants is clearly confusing and creates spillover prejudice against the defendant, a new trial may be ordered. *United States v. Pourhassan et al*., No. CR PX 22-440, 2026 WL 123835, at 14 (D. Md. Jan. 16, 2026).

Reversal of Ms. Pearl's conviction pursuant to Rule 29, therefore, or in the alternative, a new trial to in the interests of justice pursuant to Rule 33 is required. The quantum of evidence properly admissible against Ms. Pearl did not establish guilt beyond a reasonable doubt. The government's conduct and the structure of the indictment required that huge amounts of enormously prejudicial inadmissible evidence be used against Pearl, which could not be prevented by a limiting instruction.  The shifting of the burden of proof by the government to Ms. Pearl, the erroneous admission of prejudicial evidence against her, and the preclusion of the admission of relevant exculpatory evidence, contributed and are a separate basis to reverse Ms. Pearl's conviction, or grant a new trial.

## CONCLUSION

For these reasons, it is respectfully requested that the Court grant the following relief:

      (a)      a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure; or

      (b)      in the alternative, the vacating of the conviction and the ordering of a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Dated: February 2, 2026            Respectfully submitted,

                                     Paul T. Weinstein
                                     Eric Mullery
                                     Emmet, Marvin & Martin, LLP.
                                     120 Broadway, 32nd Floor
                                     New York, NY 10271
                                     (212) 238-3090
                                     pweinstein@emmetmarvin.com
                                     *Counsel to Kirstyn Pearl*

20

## CERTIFICATE OF SERVICE

I hereby certify that, on February 2, 2026 a true and correct copy of the foregoing was served on all parties through the CM/ECF system.

*Paul T. Weinstein*
Paul T. Weinstein
Emmet, Marvin & Martin, LLP
120 Broadway, 32nd Floor
New York, NY 10271
(212) 238-3090
pweinstein@emmetmarvin.com
*Counsel to Kirstyn Pearl*